## WIETZEL v. LACY.
### Patent Appeal No. 2257.

Court of Customs and Patent Appeals.
April 10, 1930.

Rehearing Denied May 19, 1930.

Hauff & Warland, of New York City (William E. Warland, of New York City, of counsel), for appellant.

Julian S. Wooster, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, J.

The Examiner declared an interference in this case, the subject-matter being contained in two counts which read as follows:

"Count 1. The process of manufacturing formamide which consists in acting on an aliphatic alcohol with carbon monoxid and ammonia, at a higher pressure than atmospheric pressure.

"Count 2. The process of manufacturing formamide which consists in acting on methanol with carbon monoxid and ammonia in the presence of metal alcoholate, at a pressure exceeding atmospheric pressure."

Wietzel filed his application in the United States Patent Office May 20, 1925, and patent No. 1,567,312, issued thereon December 29, 1925.

Lacy filed application November 17, 1925. On February 12, 1926, certain of Lacy's claims were rejected by the Examiner on the Wietzel patent. Thereupon, on March 22, 1926, Lacy copied claims 5 and 6 of the Wietzel patent and his application was amended to include them, and these claims became the counts of the interference declared April 6, 1926.

In his preliminary statement Wietzel alleged the filing of an application in Germany on August 25, 1924, and claimed this date for constructive reduction to practice, which claim was allowed by the tribunals of the Patent Office.

Lacy claims conception and written description of the product on or about January 26, 1922; disclosure to others on or about January 27, 1922; and successful reduction to practice on or about January 31, 1922.

The Examiner of Interferences determined the issue of priority in favor of Lacy, and this decision was affirmed by the Board of Appeals. Wietzel thereupon further appealed, thus bringing the question before this court.

The subject-matter of the invention, which constitutes the issue, is a process for the production of a material called formamide, one of the uses of which is as a raw material in the production of hydrocyanic acid much used as an insecticide for fumigating citrus trees, ships, rooms, etc. Hydrocyanic acid seems to have an extensive use which is constantly expanding. Formamide appears to have no use as an independent article.

We think the testimony in this case establishes the fact that Lacy, a chemist, connected for many years with the Roessler & Hasslacher Chemical Company, and, as such, interested in the synthesis of hydrocyanic acid in the manufacture of which the said company is engaged, did at the time claimed by him in his preliminary statement conceive the invention. His interest in the matter was to produce formamide, not for itself, but for use in making the hydrocyanic acid. To this end he made chemical studies and calculations which led him to conclude that formamide could be produced by the process of the counts. This conception he disclosed to an associate employee of the company, Dr. E. B. Peck, who is also a chemist. On Jan-

uary 27, 1922, Lacy and Peck collaborated in an experiment which is described with much particularity in their testimony. This experiment was successful, and a few days thereafter the process was repeated and the article was again produced.

Notes were made at the time and reports prepared, evidently quite carefully. These notes and reports were preserved and were filed as exhibits in the case. They show the quantity of raw materials used, the hour and minute of the observations made while the work was proceeding, temperatures, fall in pressure, rate of reaction, relation between rate of reaction and pressure; in short, as we understand the testimony and exhibits, a practically complete record was kept, and has been filed in the case along with other exhibits.

Dr. Lacy had kept copies of these various writings and they substantiate his testimony. He is further substantiated by the evidence of Dr. Peck, his collaborator, as to the activities in January and February, 1922. Dr. Sterling Temple, another of the company's chemists, testifies that he was made aware of Lacy's invention some time during January or February, 1922. He does not recall whether his first knowledge of it came from the written reports of Lacy or from Lacy by verbal disclosure.

The testimony of H. A. Bond is also corroborative of Lacy, not as to the early 1922 dates concerning which he did not testify, but as to the process itself which Bond states was disclosed to him by Lacy about September, 1922, after he had become associated with the latter as assistant chemist.

Bond's testimony, taken as a whole, evidences the fact that after the disclosure to him, studies were made of different processes for producing hydrocyanic acid, including the use of formamide which involved studies of the production of the latter by the Lacy formula or plan, and that in August, 1923, he began "semicommercial" production of formamide by such plan or process.

Appellant argues orally and in his brief that there are conflicts, or at least discrepancies, in the testimony of these witnesses; that Lacy and Peck differ as to the time taken in the operation of production; that Peck says no heating was required of the apparatus in which the mixture of chemicals was made, while Bond applied heat; and that Lacy and Bond do not agree on the amount of pressure applied, which latter fact he states appears from Bond's notes of operation.

We have very carefully studied the testimony with this contention of appellant in mind, and we do not agree that there are any material inconsistencies which cast doubt upon the truth of the essential features of Lacy's conception and disclosure of the production of formamide at the times and in the manner claimed.

This production, as described, we think constituted a reduction to practice in the sense of the patent laws.

In the recent case of Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U. S. 358, 382, 383, 48 S. Ct. 380, 387, 72 L. Ed. 610, the Supreme Court of the United States said: "But this patent is for the mere discovery and application in the making of rubber of a particular accelerator. It was the fact that it would work with great activity as an accelerator that was the discovery, and that was all, and the necessary reduction to use is shown by instances making clear that it did so work, and was a completed discovery."

The authorities seem to be well settled that commercial production is not necessary to constitute reduction to practice. As a matter of fact, the record discloses that there was no commercial use of formamide in 1922, nor had it been produced in commercial quantities in the United States, to any great extent, at the time of the taking of the testimony in this case in December, 1926, and January, 1927. So far as the record discloses the only production in the United States having a commercial aspect was that by Lacy's company, under the supervision of Bond, in the latter part of 1925 and early part of 1926.

Appellant insists, however, that even granting Lacy conception and reduction to practice as claimed, there was, nevertheless, a delay of nearly four years in filing his application for patent; that he failed in diligence; that his general course of conduct was such as to justify the inference of abandonment or suppression or concealment of the invention; that he was finally spurred to action in making the application by receiving information as to the filing of applications and the obtaining of patents by Wietzel in foreign countries; and that upon all these considerations he should not be awarded priority over Wietzel, whose first application was filed in Germany in August, 1924, and who, under the practice, is allowed that date for reduction to practice.

Without entering into a written analysis of the testimony upon these points, thereby unduly lengthening this opinion, let it suffice to say that each of these contentions has been carefully studied and restudied in the light of the record and of the several cases cited as authority.

Lacy, being the junior party, has the burden of proof. Since the applications were copending, he is only required to prove his case by a preponderance of the evidence.

This we think he has done.

The diligence required of one claiming to be an inventor is primarily diligence in reducing to practice after conception, and the law is not so much concerned with speed in filing application for patent, provided, of course, there is no secreting or abandonment of the invention.

We do not think this record would justify a conclusion that Lacy had abandoned his invention or that he had secreted it in the sense in which that term is meant to be understood in the administration of the patent laws.

Upon the contrary, the record fairly considered convinces us that the process of manufacturing hydrocyanic acid with formamide as an element was being constantly considered with a view of determining whether the process involving the use of formamide was economically practicable as compared with other processes. The cost element was of importance, including, of course, the cost of producing formamide itself. The lack of commercial use of formamide undoubtedly had its bearing in causing delay in filing the application. There was no commercial demand for this product, except as it could be used as a raw material for the hydrocyanic acid with which the company, so far as the record shows, was chiefly concerned. Under these circumstances we think the record really affirmatively discloses that there was no abandonment.

In so far as knowledge of the foreign patents to Wietzel is concerned, Lacy very positively denies all knowledge of them. Dr. Temple, who had to do with the preparation of the patent application, states that he prepared a first draft about the middle of October. He states that the decision to file the application was made "coincident with the decision to have Mr. Bond put into practice the Lacy invention. This decision was made about August, 1925." In answer to one question, he fixes the date of the first draft as October 18, 1925, which appellant points out was a Sunday. From this appellant argues that the importance of speed was realized and urges the inference that the parties were

being spurred by knowledge of the foreign patents to Wietzel. Dr. Temple, however, we think, makes it clear that his first information of any foreign patent to Wietzel was about the middle of November, 1925, and was derived from a title reference in the British Illustrated Journal in which the word "formamide" was used, but no process or details were given.

In Petersen v. Thomas, 56 App. D. C. 113, 10 F.(2d) 908, the Court of Appeals of the District of Columbia said: "The underlying theory of the patent law, as we many times have suggested, is that encouragement of inventors will inure to the benefit of the public. Obviously such benefit will not flow from mere conception of an invention. Such conception must be completed—that is, reduced to practice—or there has been no gain to the public. For these reasons, he who first reduces to practice is prima facie the first inventor; but under the law the party first to conceive and disclose an invention may prevail, provided he couples his conception and reduction to practice through evidence of reasonable diligence, thus making the two, in substance and effect, a continuous act. Christie v. Seybold, 55 F. 69, 5 C. C. A. 33."

Lacy assuredly met the test here laid down. His reduction to practice followed conception in a single day. The two, in substance and effect, constituted a continuous act.

There are numerous authorities establishing the law that abandonment must be affirmatively proved. In re Mower, C. D. 1899, 395, 88 O. G. 191, 15 App. D. C. 144; Hathaway v. Field et al., C. D. 1919, 177, 261 O. G. 413, 48 App. D. C. 369.

After reduction to practice, abandonment will not be inferred merely from a failure to file an application for patent or to commercialize the product. The facts and circumstances of each case must be looked to. The record in this case does not, we think, establish any abandonment by Lacy, nor do we find any evidences of suppression or concealment such as should defeat his being accorded priority.

Much of the reasoning in the Corona Cord Tire Co. v. Dovan Chemical Corp. Case, supra, will, we think, be found peculiarly applicable to the case at bar.

We are not convinced that there was error in the decision of the Board of Appeals, and the same is therefore affirmed.

Affirmed.