## EUTH v. OLIVER.*
### Patent Appeal No. 3242.

Court of Customs and Patent Appeals.
April 16, 1934.

Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill. (John H. Lee, Horace Dawson, and Bernard A. Schroeder, all of Chicago, Ill., of counsel), for appellant.

L. G. Miller, of Boston, Mass. (Emery, Booth, Varney & Townsend, of Boston, Mass., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference proceeding was instituted in the United States Patent Office between the application for a patent of the appellant, John E. Euth, filed February 6, 1930, and the pending application of the appellee, Walter E. Oliver, filed January 29, 1929, for a similar invention. The subject-matter of the interference was set out in five counts, which are as follows:

"1. In a mechanism for feeding perforated strips of material, a divided finger adapted to enter holes in the strips, and means to cause it to expand therein substantially in the line of feed, to position the material. .

"2. Mechanism for feeding strip material having holes at intervals therealong, comprising in combination with means for feeding the strip a distance approximately equal to the distance between successive holes, a gaging device operated to enter a hole substantially at the completion of such feeding movement, and auxiliary feeding means for positioning the strip by means of said gage.

"3. Mechanism for feeding strip material having holes at intervals therealong comprising, in combination with means for feeding the strip a distance approximately equal to the distance between successive holes, a gaging device operated to enter a hole substantially at the completion of such feeding movement, and auxiliary feeding means having a definite limit of travel past the position of such gage for positioning the strip thereagainst.

"4. An alignment device for a series of apertured webs, consisting of a pin composed of elements adapted for movement toward

*Appellant's petition for rehearing denied May 21, 1934.

and away from one another within the apertures of the webs, and means for causing said movement.

"5. An alignment for a series of webs having apertures therein, consisting of an expandable pin, adapted, when in contracted condition, to occupy the apertures of the webs, and when moved to expanded condition to cause said occupied apertures to become aligned, and means to expand and contract the pin."

Preliminary statements were filed by both parties, and, after the taking of testimony, the Examiner of Interferences rendered a decision awarding priority of the invention to the appellee, Oliver. An appeal was duly perfected to the Board of Appeals, and, having been submitted there, the decision of said Examiner of Interferences was affirmed. From that decision the appellant has appealed to this court.

The counts of the interference are claims 8, 12, 13, 16, and 17 of the Oliver application, which were copied and appear as claims 13, 14, 15, 1, and 2 of the Euth application.

The subject-matter of the interference concerns what are ordinarily known as autographic registers, and particularly involves split-pin alignment devices such as are usually employed to secure correct alignment of two or more printed webs or sheets, and devices for feeding and tensioning said printed webs or sheets while in use in said machines. The disclosures of the two parties are substantially the same, and no question is raised as to the counts of the interference reading equally upon both disclosures.

The Examiner of Interferences held that the party Euth was the first to conceive as to all the counts of the interference. This finding is concurred in by the Board of Appeals; the date given to Euth for such conception being, broadly, the summer of 1927. The Examiner of Interferences also held that Euth had reduced to practice as to counts 4 and 5 of the interference at the same time. These counts are the ones involving the split-pin aligning device. The Examiner of Interferences was not convinced that the subject-matter of counts 1, 2, and 3 was successfully reduced to practice in the summer of 1927.

He further found that the party Euth had filed in the Patent Office, on November 25, 1927, an application for a patent, which application disclosed a web aligning device substantially as is involved in his application here in interference; that this application

was allowed to become abandoned in September, 1928; that in May, 1928, the appellee, Oliver, conceived and reduced the invention here in issue to practice, filed an application in January, 1929, and started the commercial sale of his invention in April, 1929; that thereafter, on February 6, 1930, Euth filed the application here in interference.

The Examiner of Interferences also found, on the record, that Euth had abandoned that part of his invention reduced to practice in June, 1927, and that, as to the subject-matter of counts 1, 2, and 3, he was not diligent in reducing the same to practice during the period from January 29, 1929, the date of Oliver's pending application, and February 6, 1930, the date of Euth's application here in interference.

The Board of Appeals, while concurring in the conclusion reached by the Examiner of Interferences, did not entirely concur with his reasons. The Board was of opinion that Euth had not shown a reduction to practice of any of the counts of the interference in 1927. Being of the opinion that there had been no such reduction to practice, the Board held that the burden was upon Euth to establish diligence from just before the entrance of Oliver in the field, May 17, 1928, until Euth filed the application here involved, on February 6, 1930. This conclusion rested in part on the ancillary holding that Euth's former application of November 25, 1927, had been abandoned on September 23, 1928. The Board was of opinion, after considering the record, that, while Euth was first to conceive as to all counts, he had not been diligent over the period heretofore mentioned, and hence priority as to all counts was awarded to Oliver.

The appellant, Euth, is an experimental engineer, and is the assignor to the Globe Register Company, of Cincinnati, Ohio, which was taken over by the United Autographic Register Company, of Chicago, in the summer of 1928. His original application, No. 235572, of November 25, 1927, was filed prior to this consolidation.

Euth testified that he conceived the invention in the latter part of 1925, and that at that time, or shortly afterwards, he disclosed the same to the foreman of his department, and later to the superintendent of the plant, Mr. Konerman, that he was authorized to construct a small hand-pull machine, and that he thereafter did so. It appears from his testimony that the machine was not preserved, and there is nothing by which its make-up may be disclosed except a small

sketch drawn by Euth since that time, from his recollection of what the machine was. At best this machine was experimental, was not intended for use, and is not claimed by Euth to have been a reduction to practice.

Two other machines were constructed by or under the direction of Euth thereafter— one known as Exhibit 3, having been built in the early part of the summer of 1927, and a later machine, known as Exhibit 10, having been completed about the latter part of July, 1927. This last-named machine was built for exhibition at a so-called round-up of the Globe Register Company officials and salesmen, which was had in August, 1927.

This machine, Exhibit No. 10, is satisfactorily shown to have been exhibited at said round-up. Most of the controversy in this case centers about the question as to whether this machine constituted a reduction to practice of the subject matter of the counts at issue. When the testimony in chief for appellant was taken, this machine was not available; it being claimed that the same was lost. Later, a further search disclosed the whereabouts of the machine, and it was produced, and, after the Commissioner of Patents had permitted the introduction of further testimony on this point, it was shown that the exhibit had been in the storeroom of the assignee of appellant since its original exhibition at the said round-up. The machine is before us, and is claimed to be capable of operation and to produce satisfactory results; thus demonstrating, as it is claimed, a complete reduction to practice of the subject-matter of all the counts in August, 1927. There seems to be little doubt that the split-pin element was incorporated in this device, and that it worked with reasonable accuracy.

The record shows that this machine has not been altered. No contention is made that the alignment, expandable pin device did not operate and a demonstration before the court of said Exhibit 10 plainly discloses that this portion of the register is completely operative.

We find ourselves in agreement, therefore, with the Examiner of Interferences, in his conclusion that Euth reduced to practice the subject-matter of counts 4 and 5 prior to August, 1927.

It is argued by appellee that the device of Euth was never advanced to the point where it could have been used in a commercial way. Applying ourselves to the subject-matter of said counts 4 and 5, it was not necessary that there be a commercial pro-

duction of the device to constitute a reduction to practice. Wietzel v. Lacy, 39 F.(2d) 672, 17 C. C. P. A. 943; St. John et al. v. Schulze, 47 F.(2d) 798, 18 C. C. P. A. 1050.

■ The Board of Appeals makes the following suggestion: " * * * We find no reason to make any distinction between counts 4 and 5 and counts 1, 2 and 3 in this respect. The separable pins represented by counts 4 and 5 do not appear to have been conceived as having any use separately from some machine combination of this or similar type."

This, it seems to the court, is not a sufficient reason for failing to award priority to Euth upon counts 4 and 5, if, in fact, he conceived and reduced to practice the separable pin device. The counts of this interference were so framed that counts 4 and 5 thereof read solely upon this separable pin element. If Euth reduced that element to practice, as we have concluded he did, and did not afterward abandon the same, so far as the issues here are concerned, he is entitled to an award of priority, upon counts 4 and 5, even though he may have so reduced it as an element of some combination which he was then attempting to perfect.

There is a clear distinction, however, between said counts 4 and 5, and counts 1, 2, and 3 of the interference. While said counts 4 and 5 are limited and restricted to the expandable pin device, counts 1, 2, and 3 include within their scope a combination device, of which the expandable pins are but one element. Counts 2 and 3 include feeding means, gaging means, and auxiliary feeding means. Count 1, although more general, we think may properly be considered as including a feeding mechanism. Therefore these claims stand upon different ground than do claims 4 and 5.

As to these combination claims, 1, 2, and 3, proof of reduction to practice, if any such exists, must be found in the operation of Exhibit No. 10 at the round-up in August, 1927. The proof of the successful operation of this machine, except as to the split-pin alignment device, is far from satisfying the mind that at this convention, in August, 1927, the subject-matter of counts 1, 2, and 3 of this interference had been successfully reduced to practice.

Without going into any extended discussion of this testimony, it may be said that the witnesses who were most interested, and who were present at the time of this display of Exhibit No. 10, while generally expressing the opinion that the device was successful, all

seem to unite in the view that the machine was experimental, and that there were features about its operation which must be adjusted and further experimented with before the machine could be said to operate successfully. These defects are admitted by counsel for Euth, but it is said they were merely features having to do with the adjustment of the tensioning or feeding features.

Whatever these defects may have been, they did at least convince those who were concerned in its production that further experimentation was necessary, and, as a matter of fact, the record discloses that, thereafter, many attempts to remedy the defects of this machine were made, especially in the disassembling and reassembling of the parts of the machine known as Exhibit No. 3.

We are unable to escape the conviction from this record that it was not the intention of the assignee of the appellant to proceed further in the matter of application for this patent, as embodied in counts 1, 2, and 3 until the completed device was ready for commercial production.

As has been noted, the Examiner of Interferences found that Euth had abandoned his invention embodied in said counts 4 and 5, when he permitted his application to become abandoned in September, 1928.

It can hardly be said that anything done by Euth could be considered as an abandonment of the invention which is the subject-matter of counts 4 and 5, so long as his first application was pending in the Patent Office; namely, up until September, 1928. From that time until his second application, namely, February 6, 1930, a period of about sixteen months elapsed. Can it be successfully contended that, because of the lapse of this period, even though there was but little activity on the part of Euth or his assignee during that period, Euth and his assignee shall be held as having abandoned his split-pin alignment invention which he had actually reduced to practice prior to August, 1927?

It is not a question of the diligence of Euth as to counts 4 and 5. It is a question of whether he should lose his invention because of his abandonment of this application. Neither in the lapse of time nor in the record otherwise do we find anything which convinces the mind that Euth or his assignee intended to abandon the invention. In fact, correspondence in the record seems to indicate that it was the intention not to abandon the same, but to proceed, later, to exploit it. Under the doctrine of our cases on this subject, the court is unable to agree with the Examiner of Interferences that abandonment of the invention embodied in counts 4 and 5 is shown by this record. Wietzel v. Lacy, supra; Brydle v. Honigbaum, 54 F.(2d) 147, 19 C. C. P. A. 773.

However, the situation is different as to the invention which is the subject-matter of counts 1, 2, and 3 of the interference, and which we have seen was not reduced to practice prior to the round-up in August, 1927. There is no proof in the record of any actual reduction to practice of this invention. The case of Euth as to these counts must rest upon constructive reduction to practice, either by his first application of November 25, 1927, or his later application of February 6, 1930.

The contention is made by appellant's counsel that Euth's earlier application of November 25, 1927, which became abandoned in September, 1928, should be treated as a constructive reduction to practice of the subject-matter of Euth's application here in interference. On the other hand, it is contended by opposing counsel that such application can only be considered as evidence of conception. Such, also, was the conclusion of the Patent Office tribunals.

The question is one of first impression in this court. It has, however, received the attention, not only of the tribunals of the Patent Office, but of other courts.

In Webster v. Sanford, 1888 C. D. 92, Commissioner Hall, in a very instructive decision, discussed the status of abandoned applications, and held that such abandoned applications might not be taken as a constructive reduction to practice as to claimed patentable subject-matter of succeeding applications, when intervening rights had arisen. Such an abandonment of the application, the Commissioner held, does not operate as an abandonment of the invention, but leaves the field open to subsequent inventors.

Mitchell, Commissioner, in Lorraine v. Thurmond, 1890 C. D. 86, again had this matter under consideration, and in a very comprehensive and strong opinion, in which the various authorities were reviewed, held that a rejected and abandoned application could only evidence conception, and was not sufficient to establish reduction to practice. The Commissioner stated, in part: "If, as held in Seymour v. Osborne [11 Wall. 552, 20 L. Ed. 33], supra, an invention is not patentable under the patent laws until it be perfected and adapted to use, and if, as held in the Telephone cases [C. D. 1888, 321;

Id., 126 U. S. 535, 8 S. Ct. 778, 31 L. Ed. 863], supra, and other cases cited, reduction to practice is not essential in order to obtain a patent, it follows that actual reduction to practice is not the only competent evidence of perfection and adaptation to use, but that the inventor's act in filing an allowable application is to be regarded in law as such an efficient and crowning step as to give it the standing of an invention so perfected and adapted. Interferences are declared after the applications involved are pronounced to be allowable by the experts of the office. In determining whether the application is allowable the question of operativeness is one of the primary considerations. (Rule 133.) It hardly need be added that approved applications stand upon an entirely different basis from those which have been rejected by the office or abandoned by the applicant. (Webster v. Sanford, C. D., 1888, 92, 44 O. G. 567; Beach v. Fowler, C. D. 1889, 187, 48 O. G. 821.) Completed and allowed applications evidence completion of invention, and in suits brought upon patents granted thereon that stage of invention which is usually evidenced by reduction to practice is conclusively assumed to have been reached. Hence the doctrine of 'constructive reduction to practice.' "

Again, in Hien v. Pungs, 1894 C. D. 92, Commissioner Seymour announced the same doctrine, adding: " * * * Hien's second application contains no reference to the first, and the proceeding being wanting in continuity it must be held that his claimed constructive reduction to practice on the date of his abandoned application cannot avail him in this interference. Such application is evidence only of conception and cannot defeat the patent to Pungs."

To the same effect is Trufant & Prindle v. Brown, 1904 C. D. 282, and Ames v. Lindstrom, 1911 C. D. 68. It will be noted that Ames v. Lindstrom, supra, was a case in which there were co-pending applications, and in which no patent had been granted to either party.

The Court of Appeals of the District of Columbia, speaking through Mr. Justice Shepard, in Carty v. Kellogg, 7 App. D. C. 542, cited Hien v. Pungs, supra, with approval, again announcing the principle that an abandoned application could only be considered as proof of conception.

An interesting case on the subject is Wainwright v. Parker, 32 App. D. C. 431. Here a party filed an application for patent, disclosing the invention in issue. Upon objection by the Primary Examiner, the appellant amended his application so as to eliminate all claims for the invention later claimed, and the application then went to patent. A considerable period thereafter the appellant attempted to claim a constructive reduction to practice of the invention in issue, based upon this early application. This was not allowed; the court holding that the appellant, having acquiesced in the action of the Patent Office, could not claim his disclosure in said prior application as a constructive reduction to practice.

In harmony with the general principle underlying these cases is our decision in Conover v. Downs, 35 F.(2d) 59, 17 C. C. P. A. 587. There a constructive reduction to practice was claimed as to certain subject-matter disclosed by an application which had gone to patent, and in which application and patent there were no claims for the processes involved in the subsequent application. This court held that, inasmuch as the appellant had acquiesced in the request of the Patent Office that he cancel certain claims which included the subject-matter of the subsequently claimed invention, the appellant could not, on the second application, claim the disclosure in said prior application covered by the canceled claims to be a reduction to practice of the invention claimed in the second application. To the same effect is Fessenden v. Wilson, 48 F.(2d) 422, 18 C. C. P. A. 1171.

In The Corn Planter Patent, 23 Wall. 181, 211, 23 L. Ed. 161, the Supreme Court, in commenting upon this general subject-matter, said: " * * * But a mere application for a patent is not mentioned as such a bar. It can only have a bearing on the question of prior invention or discovery. If upon the whole of the evidence it appears that the alleged prior invention or discovery was only an experiment and was never perfected or brought into actual use, but was abandoned and never revived by the alleged inventor, the mere fact of having unsuccessfully applied for a patent therefor, cannot take the case out of the category of unsuccessful experiments."

Other cases might be referred to, but, for the purposes of this opinion, it is thought that the authorities cited sufficiently indicate the proper rule in such cases. Here the applicant filed his application and proceeded to the point where there had been an interlocutory decision in the matter. Thereupon he acquiesced in the abandonment of the application. During the time when such ap-

plication had become abandoned by process of law, the appellee filed his application in the Patent Office for a patent on this invention. In such case, when adverse interests have arisen, it seems to be the reasonable rule that the applicant should not be permitted to rely upon his abandoned application as a reduction to practice, but that, if he is to succeed in an interference involving such adverse interests, it must be by proof of actual reduction to practice, or by proof of diligence or other facts which would entitle him to an award of priority.

We do not have here a case where an application has gone to allowance in the Patent Office, and the issuance of patent is then forfeited. What we have here said has in mind the particular facts shown by this record.

██ Euth's claim to priority, therefore, as to counts 1, 2, and 3, must rest upon his diligence from just prior to Oliver's entrance into the field in May, 1928, until he filed his present application on February 6, 1930.

We agree with the Board of Appeals in its holding on this point. It does not appear that there was any further activity in the matter of an application for patent upon the subject-matter of counts 1, 2, and 3 on the part of Euth or his assignee until the device of Oliver was on the market and had been demonstrated to be operable and commercially successful. Thereupon the present application was filed, over a year after Oliver had entered the field. During that interval, we are unable to discover from this record any reasonable attempt to file a proper application in the Patent Office at the earliest possible moment. Some correspondence took place, and some experimentation. Such experimentation, however, was not of such a character as to show diligence in reducing to practice. If the alleged invention was so well formulated and so perfectly in mind that it was claimed it was fully disclosed and reduced to practice in the summer of 1927, there seems to be no reason why over a year was taken from the time of the entrance of Oliver into the field until a proper application was prepared and filed in the Patent Office by Euth or his assignee.

On the other hand, the party Oliver conceived the subject-matter of the counts of this interference, and disclosed the device to others in May, 1928, made drawings, and filed his application with reasonable celerity on January 29, 1929. The original machine which constituted a reduction to practice was preserved and produced. No question exists as to the commercial success, practicability, and operativeness of Oliver's device.

We therefore conclude that the Board of Appeals properly awarded priority to the party Oliver as to counts 1, 2, and 3 of the interference, and its decision, in that respect, is affirmed. As to counts 4 and 5, we find error in the decision of the Board of Appeals, and it is reversed, and priority as to said counts 4 and 5 is awarded to the party Euth.

Modified.