## RINEY v. THOMAS.

### Patent Appeal No. 3493.

Court of Customs and Patent Appeals.
June 3, 1935.

Barry & Cyr, of Washington, D. C. (Robert E. Barry, of Washington, D. C., of counsel), for appellant.

Kwis, Hudson & Kent, of Cleveland, Ohio (S. J. Boughton, of Cleveland, Ohio, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

David W. Thomas filed an application in the United States Patent Office on August 6, 1930, for a patent upon protectors or closures for pipe, especially adapted for use in pipes to be used in gasoline pipe lines. This application finally proceeded to patent, No. 1,837,345, issued on December 22, 1931.

The appellant, Arthur H. Riney, filed an application for a similar protector in the office on November 2, 1931. Upon the issuance of the Thomas patent, the party Riney copied claims 3 and 4 of the Thomas patent, and thereafter an interference was declared by the Patent Office between the patent of Thomas and the application of Riney. The counts of the interference are two, being claims 3 and 4 of the Thomas patent, and are as follows:

"1. In combination with a cylindrical member, a closure therefor comprising a sheet metal cup fitted into the end of the cylindrical member, said cup having an annular groove in its outer wall, and a rubber gasket mounted in said groove, the metal behind said groove being expanded outwardly, whereby the gasket is compressed to seal the closure, and the metal of the cup adjacent the groove being likewise expanded to grip the wall of the cylindrical member.

"2. In combination with a cylindrical member, a closure therefor comprising a sheet metal cup fitted into the end of the cylindrical member, said cup having a circular corrugation in its side wall, a gasket mounted therein, said corrugation being expanded outwardly, whereby the gasket seals the joint between the cylindrical member and cup, the metal of the cup wall adjacent to said corrugation being likewise expanded to tightly grip the interior wall of the cylindrical member."

No motion to dissolve the interference was filed by either party. The Examiner of Interferences found that the party Riney had failed to sustain the burden imposed upon him by virtue of being the junior party, and held that the counts of the interference were not supported by the disclosure of the Riney application. The Board of Appeals affirmed this decision on practically the same grounds. Both tribunals seem to be of the impression that the party Riney had never disclosed, prior to Thomas' filing date, the particular combination described in the counts of the issue, and in fact the Board of Appeals expressed the opinion that it was not satisfied that he had done so in his application here in issue.

Riney took testimony in support of his contentions. The party Thomas offered no evidence of any kind, and hence was relegated by the Patent Office tribunals to his date of filing, namely, August 6, 1930, for conception and reduction to practice.

■ The facts in the case, as shown by the record, are substantially as follows:

Riney was chief engineer for the Phillips Petroleum Company, of Bartlesville, Okl. In the early part of 1930, the Phillips Pipe Line Company was laying a gasoline line from Borger, Tex., to East St. Louis, Illinois. Evidently the Phillips Petroleum Company was immediately concerned in this project, and Riney, as chief engineer thereof, had charge of certain details of the construction. In considering the shipment of the pipe required for this pipe line, Riney's attention was called to the liability to injury of the ends of the pipes in transit.

It was necessary, in the construction of such pipe lines, that the pipe be kept free from internal rust and dirt, and from distortion of the ends. For this reason, Riney then engaged in the construction of a sealer to be placed in the ends of the pipe to protect them until they were put to use. Riney states that he conceived the invention about January 25, 1930. It appears that in March, 1930, while driving from Bartlesville, Okl., to St. Louis, Riney discussed the matter and outlined his ideas about what this protector should be to Auld, an engineer employed by the Phillips Petroleum Company. Auld corroborates this conversation. In general, the conversation, according to these two witnesses, concerned a sealer of the same general type as that which is the subject of the issue here.

As a result of this talk, on April 9, 1930, Riney and Auld drew up a paper known as Evidence of Invention, and signed and dated the same. This document describes, in general, the problem which was attempted to be solved, and appended thereto is a sketch of the protector then in mind. The object of the invention was, in part, stated to be: "The pipe protector and sealer is made of suitable materials of which pressed steel may be one and is pressed into or placed on the pipe in such a fashion as to give the protection mentioned." It is noted that the drawing accompanying this Evidence of Invention does not have an external groove in the cap for the reception of a rubber gasket. The drawing is of a cup inserted into the interior of a pipe and this statement is made: "The protector or sealer is shown in place in, or on, the end of the pipe or tube, as it is to be placed in the pipe factory, where it is held in place by friction against the inside surface of the pipe." Riney, on being asked why this drawing did not show a groove and gasket, said that the groove feature was added later, but before April 24, 1930, when orders for the construction of some of these sealers with grooves and gaskets were issued to the Lep Machine Shop of the Phillips Petroleum Company.

It further appears that a number of these sealers or protectors were made at the Lep Machine Shop in April and May of 1930. Dies had to be made to produce these sealers, but the fact that they were built, and are in substantial conformity with the sealer which is here in controversy, with the exception of the flattened groove, in April and May of 1930, is not controverted. After the shop had constructed these protectors, one of them was inserted into a section of pipe and the whole section was then cut in half. This is known as Riney's Exhibit 3, and shows the sealer which is here in controversy, with the exception of the flattened groove. It is not denied that this Exhibit 3 was made in the spring of 1930, long before Thomas' filing date. It was seen by various people who worked in the shop, and the date of its construction is generally fixed at about the middle of May.

After the construction of these sealers, some of them were placed in pipes, and these pipes were shipped. For instance, one piece of pipe with protectors in each end was shipped to Breckenridge, Tex., and thence back to the shop. This was done about May 14, 1930.

In the latter part of May, Riney instructed Paul P. Gustin, the superintendent of the Lep Machine Shop, to go to various mills, particularly that of the Roessing Manufacturing Company, of Pittsburgh, Pa., for the purpose of attempting to make a contract for the making of these protectors in quantities sufficient for the needs of the prospective pipe line. Mr. Roessing, of the Roessing Manufacturing Company, met with Gustin on June 1, 1930, and thereafter these parties visited various mills in Pittsburgh and at Youngstown, Ohio. At the Republic Steel Company's plant in Youngstown, Ohio, the question was discussed as to the feasibility of "pressing these protectors into the finished pipe by means of the same rams which were used in making the hydrostatic test."

At about this time, Gustin met Thomas, the patentee, in the office of the Southwest Supply Company, in Pittsburgh. Thomas was then connected with the Niles Steel

Products Company. According to the testimony of Gustin, Thomas stated that he had come from his plant at Youngstown to talk to Gustin about a pipe protector which Thomas had devised. This pipe protector, according to Gustin, had no groove, but had a gasket within the flange on the outside end of the protector. It was Thomas' idea to hold the protector in place in the pipe by means of a bolt in the center of the protector, and a flat piece of spring steel which would engage with the interior surface of the pipe. On June 5, 1930, Gustin showed Thomas a sample of the protector which had been made at the Lep Machine Company. After some further negotiations, Gustin went to Youngstown and gave Thomas an order for making an experimental machine to "expand these protectors into the pipe after first going back to the Republic Steel Company's mill to find out definitely whether compressed air for this purpose would be available." A contract was finally entered into by virtue of which the Niles Steel Products Company undertook to manufacture the protectors. All these negotiations occurred long prior to the time of appellee's filing.

Prior to going to Pittsburgh, Riney and Gustin discussed the methods to be adopted in "rolling out the groove, hammering it out by means of expanding tools and also about expanding it by means of fingers pushed either by a cylinder or piston using either compressed air or water pressure."

It is quite apparent that the problem which was presented by Gustin to Thomas during these transactions was that of producing a machine or device which would press out the groove in the protectors, thus making a better joint and protection against foreign materials entering the pipe during shipment and before actual use. It is also apparent that Thomas, at that time, had no conception of the invention of the issue here, and was, in fact, attempting to perfect a protector constructed along entirely different lines. It also is apparent that Thomas prepared a machine, at that time, for pressing out the grooves of Riney's protector, according to the wishes of Riney expressed at that time. It is conceded by counsel that Thomas did, in fact, afterwards obtain a patent upon the device then conceived and disclosed by him for flattening out these grooves.

The testimony of Riney and Gustin is corroborated by John A. Bell, Jr., president of the Southwest Supply Company, and by that of Frank M. Roessing, president of the Roessing Manufacturing Company, all of whom had dealings with the Phillips Petroleum Company relative to the manufacture of these protectors in issue here.

It is stated by the Examiner of Interferences that Riney did not prove his dates of conception and reduction to practice, as alleged by him in his preliminary statement, and this is thought to be a circumstance which should be considered. However this may be, the proof is ample in the record that prior to Thomas' date of filing, Riney had conceived the protector in question, had disclosed it to Thomas, and that it had been fully reduced to practice by Thomas, at Riney's request and as a result of said disclosure. We hold that this reduction to practice inured to Riney's benefit.

But one matter is left for consideration. Did Riney conceive and disclose the subject-matter of the counts in interference, namely, did he conceive and disclose such a combination as is expressed in these words in count 1, "a rubber gasket mounted in said groove, the metal behind said groove being expanded outwardly, whereby the gasket is compressed to seal the closure, *and the metal of the cup adjacent the groove being likewise expanded to grip the wall of the cylindrical member?*" The words in italics disclose the feature which the Patent Office tribunals believe was not disclosed or reduced to practice by Riney prior to Thomas' filing date.

In reply to this proposition, it is contended by counsel for appellant that the feature of expanding the metal of the cup against the interior surface of the pipe on both sides of the gasket was inherent in the conception and disclosure of Riney, and that, therefore, a disclosure of the necessity of flattening the groove outwardly carried with it everything that is contained within the italicized language. This, it seems to us, is true. It is shown by the evidence of invention that Riney's conception, from the beginning, was of a closure or protector which fitted tightly into the pipe, and was held there by friction between the protector and the interior surface of the pipe. If this be true, then the formation of a groove intermediate of the sides of the protector, into which a rubber gasket was fitted, would still leave the protector with its metal exterior in frictional contact, outside of the groove, with the in-

terior surface of the pipe. It is inherent, in such a disclosure, that if there be pressure exerted upon the grooved surface of the metal, this will cause a closer contact between the surfaces immediately adjoining each side of the groove and the interior surface of the pipe. It would not be possible for it to operate otherwise, and this, we believe, would be at once apparent to any one skilled in the art to whom such a disclosure was made.

We have no doubt that Riney was the first inventor of the particular form of closure used. It is also obvious that his representative went to Thomas at a time when Thomas had no such conception, and fully disclosed his invention to Thomas. At the same time, Thomas was requested to make an invention of a tool which would compress the grooves in these closures, and thus make a more complete sealing of the pipe. This obviously would suggest at once to Thomas the subject-matter of the issue here. If the counts of this interference were so drawn as to exclude the expansion of the metal adjacent to the groove against the surface of the pipes, it would, we think, be conceded that Riney is entitled to priority. The mere fact that Thomas may have so framed certain of the claims of his patent to include an inherent quality of Riney's invention which, perhaps, was not specifically mentioned by Riney in his disclosure, does not, in our opinion, entitle Thomas to the benefit of an invention which was, in fact, first conceived by Riney.

With respect to the holding of the Board of Appeals that the party Riney does not make a disclosure in his application sufficient to satisfy the counts of the interference, it is sufficient to observe that in this application the party Riney makes this statement as to the formation of his protector: "Extending outwardly from the disk is a neck or ring D, preferably of cylindrical shape so that it may snugly and frictionally engage the inner surface of the pipe." From this and other statements in the specification, it appears that the protector would frictionally engage the inner surface of the tube, even were no groove and gasket present. It is also obvious that this being true the surface of the protector on both sides of the groove is in actual contact with the pipe, and that any expansion or flattening of the groove will force the metal on both sides of the groove into closer contact with the pipe. We,

therefore, conclude as to this feature of the case that the Board of Appeals was in error in holding that the party Riney has not disclosed the subject-matter of the issue here in his application.

Being of the opinion that Riney was the inventor of the subject-matter of the issue, and that he conceived and disclosed the same to appellee, Thomas, and that it was reduced to practice as hereinbefore stated long prior to Thomas' filing date, it follows that the decision of the Board of Appeals should be reversed, and priority be awarded to the party Riney. This will be the order.

Reversed.