22 C. C. P. A. (Patents)

## In re HUDDLESTON et al.

### Patent Appeal No. 3516.

Court of Customs and Patent Appeals.
June 3, 1935.

Charles E. Riordon and C. Russell Riordon, both of Washington, D. C. (William H. Maxwell, of Los Angeles, Cal., and Edgar J. Clarkson, of Washington, D. C., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

From the decision of the Board of Appeals of the United States Patent Office, affirming that of the examiner, rejecting claims 63 to 71, inclusive, of appellants' application for a patent for an oil well tool, appellants have appealed here.

The claims were rejected upon the ground that they did not read upon appellants' disclosure.

Claims 63 and 64 are claims 1 and 2, respectively, of the patent to Stephan, No. 1,794,991, of March 3, 1931.

Claims 65 to 68, inclusive, are claims 1, 2, 13, and 14, respectively, of the patent to Newsom, No. 1,798,337, of March 31, 1931.

Claims 69 to 71, inclusive, are claims 1 to 3, respectively, of the patent to Knox, No. 1,801,673, of April 21, 1931.

The claims were copied from the above patents by the applicants for the purpose of interference.

Claims 63, 65, and 69 were, by the board, regarded as being typical and will be so regarded here. The limitations in all the claims which the Patent Office tribunals held did not read upon appellants' disclosure will be pointed out herein. The typical claims follow:

"63. A jarring tool comprising a body, a mandrel extending into the body, coupling means on the body to which a bit is adapted to be secured, coupling means on the mandrel to which drill pipe is adapted to be secured, means slidably mounting said mandrel in the body, said slidably mounting means being adapted and arranged to rotate the body when the mandrel is rotated and slips in said body engaging the mandrel, said slips retarding the upward movement of the mandrel."

"65. In a combination with a tubular drill string, a jar interposed at a point in the length thereof, said jar comprising a tubular shell secured to one length of said drill string, a tubular mandrel secured to the other length of said drill string and telescoping into the shell, means forming a fluid seal between the shell and the mandrel whereby fluid may have unrestricted flow through the drill string and the jar without leaking therefrom, means permitting limited longitudinal movement between the jar and shell to create a jarring action, and means normally holding said mandrel and shell against relative longitudinal movement while releasing under excessive pull to permit said jarring action, the last named means including fingers mounted on the mandrel and a latch construction having a portion of the fingers interengaging with a sloping abutment structure connected with the shell."

"69. A rotary jar adapted to be coupled between the lower tool joints of a fishing or drilling string, comprising a tubular hammer member having a splined hammer head formed thereon; a coupling pin fastened to one end of said hammer member and a wash pipe, having a head formed thereon, fastened to the other end; a housing slidably mounted around the tubular hammer member and wash pipe, splines in the housing to engage the considerably shorter splined hammer head so that at any position of the members rotation of one causes rotation of the other; a coupling pin fastened to one end of the housing and an anvil member fastened to the other end; a locking assembly to automatically lock the tubular hammer member and the housing in a telescoped position, and means to cause the locking assembly to automatically unlock the said members at any desired strain or pull upon the coupling pins, thereby allowing the hammer head and anvil to strike forcibly together so as to impart a jar to the tools connected to the said coupling pins."

Appellants' application relates to a jarring tool for a rotary well drill. When drills get jammed or stuck in a well, a jarring force is required to jar the drill loose. The applicants' device and the device in each of the patents from which the involved claims were copied all work upon the same kind of drill. Applicants' tool works upon a different principle than do the devices of the patents. The differences in the structures which are important here will be disclosed as the claims are discussed.

Claims 63 and 64, taken from the Stephan patent, call for a coupling means on the body to which a bit is adapted to be secured, and coupling means on the mandrel to which the drill pipe is adapted to be secured. The reverse of this coupling arrangement is shown in appellants' construction. The board held that equivalents could not be considered. In addition to this objection, the board and the examiner call attention to the fact that the claims require that slips *retard* the movement of the mandrel. In applicants' device, if the fingers be regarded as slips, they do not *retard* but actually *lock* the movement and will unlock only by the action of a piston under water pressure.

Claims 65 and 66, from the Newsom patent, require that the means which holds the mandrel and the shell against longitudinal movement be releasable under excessive pull. Excessive pull will not release applicants' means when in locked position. It must first be unlocked. Claims 67 and 68 also have the same limitation found in claims 65 and 66, above referred to. The examiner also pointed out that in claims 67 and 68 the claims require that the mandrel be pulled upwardly to release the latch structure, while in appellants' device the mandrel remains stationary and the shell is pulled upwardly.

Claims 69 to 71, inclusive, require that the assembly be *automatically* unlocked at any desired strain or pull upon the coupling pins. In the Knox device from which patent these claims were copied, the unlocking device consists of a ring of balls placed in an annular member which ring moves inwardly when pressure is applied and permits the annular member to move downwardly against the action of a spring. This action releases the jar and causes the hammer to strike the anvil. This constitutes an automatic release, and the term is given this meaning by Knox in his specification and claims. As has been hereinbefore pointed out, appellants' structure does not automatically unlock, since the unlocking takes place not on account of the pull on the coupling pins but under the action of the pressure created by said piston.

In concluding its decision affirming that of the examiner, the board said: "As we view the claims, appellants' jarring mech-

anism is made effective in a different manner than are the jarring mechanisms disclosed in the patents to Stephan, Newsom and Knox and the claims in the patents must be construed in the light of the patented disclosures and may not be interrupted [interpreted] so broadly as to lose their vitality when considered with these disclosures. We are satisfied that the claims copied from these patents could not be properly interpreted as broadly as suggested by appellants and that there is no interfering and common subject matter presented in appellants' construction and those of the patents, at least as pointed out by appellants."

We agree with the reasons assigned by the board for the rejection of all the claims at bar. Appellants in this court have argued at great length that all four devices are used in the same art and that each of them by the application of a strain on the pins brings about the sudden jarring. Applicants state that they disclose all that the patents show and one additional feature, to wit, the piston which releases the fingers. Appellants state: "* * * It is therefore submitted that applicants invented a structure having the same underlying mode of operation that characterizes the devices of Stephan, Newsom and Knox, and that in so far as this structure supports broad claims, those claims should issue to applicants or at least, interference proceedings should be declared to determine who is the real and first inventor of such structures. * * *" Also: "It is well settled patent law that a device does not avoid infringement or embody a different invention merely because it includes or has incorporated in it an element *in addition* to those present in the claim in question. * * *" (Italics quoted.)

In a supplemental memorandum filed after argument in this court, appellants state:

"It has long been the practice of the Patent Office when the claim of a patent cannot be made in exact terms by an applicant, to accept a claim to such subject matter in terms readable upon the application. * * *

"In the present instance the situation is reversed, viz., the claim of the patent has been presented. It would be a poor rule that does not work both ways, and it would not be equitable to prevent applicant from making this claim under the present circumstances."

We cannot concur in appellants' views above quoted. This is not an infringement action, and, by the decisions of this court and the Court of Appeals of the District of Columbia, in this kind of proceeding, it is too well settled to require extended discussion that expressly defined limitations may not be disregarded. Atherton v. Payne, 54 F.(2d) 821, 19 C. C. P. A. (Patents) 867, and cases cited, including Field v. Stow, 49 F.(2d) 1072, 18 C. C. P. A. (Patents) 1502.

In Atherton v. Payne, the rivets in Payne's claim were held not to meet the limitations called for in Atherton's claims "contact pins on the stem."

In Field v. Stow, the claim in controversy from the Field patent called for a mine car with a "floor supported on * * sill flanges," while Stow's structure showed the floor "supported by" the sill flanges, the floor being underneath the sill.

In both cases, Atherton v. Payne and Field v. Stow, this court held that the limitations above referred to could not be ignored. Where there is common patentable subject-matter in two or more disclosures, it is always possible for a count to be so framed that the inventors may have a priority contest on the real invention involved, and the fact that the structures are similar and are used for similar purposes is no justification for the issuance of a patent with claims which do not read upon the disclosure therein.

We are in full accord with the decision of the Board of Appeals, and the same is affirmed.

Affirmed.