25 C.C.P.A.(Patents)

## MITCHELL et al. v. WHITE.
### Patent Appeal No. 3853.

Court of Customs and Patent Appeals.
Dec. 23, 1937.

Lockwood, Lockwood, Goldsmith & Galt, of Washington, D. C. (Dwight B. Galt and Ralph G. Lockwood, both of Washington, D. C., of counsel), for appellants.

George A. Smith, of Philadelphia, Pa., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences awarding priority of invention to the appellee, White, in the single count of the interference.

The specific invention involved in the count, which is claim 13 of the Mitchell

and Lannerd patent, No. 1,936,335, of November 21, 1933, is concerned with a means for removing the uppermost record from the stack of an automatic phonograph upon the completion of the reproduction of the record. White filed his application May 14, 1931. Appellants' application was filed June 23, 1932. The sole question upon which priority of invention depends is whether or not the count reads upon White's disclosure. It is not disputed but that White is the first inventor of the subject-matter of the count if he disclosed it in his application.

The count in issue follows:

"In an automatic phonograph, the combination with a turntable adapted to receive a stack of records, and a reproducer, of *means for removing the uppermost record from the stack upon completion of the reproduction thereof including* an arm pivoted adjacent the turntable, *means actuated upon completion of the record for swinging said arm laterally into engagement with the uppermost record of the stack, and means for elevating said arm upon the continued movement of said means for raising said uppermost record to permit the discharge thereof.*" (Italics ours.)

Originally, White, before the Primary Examiner, moved to add to the interference most of the claims of appellants' patent. At the proper time, Mitchell and Lannerd moved to dissolve the interference under rule 122 of the Rules of Practice of the United States Patent Office, on the following ground:

"That the disclosure by the party White in his application involved herein does not support the count in interference when construed in the light of the patent in interference and the prior art cited against the interfering patent and application, wherefore, the party White does not have the right to make said count."

Since White's motion to add additional counts was not granted, the motion of Mitchell and Lannerd to dissolve was directed to the sole count in interference which is above quoted. The Primary Examiner denied the motion to dissolve. The Examiner of Interferences awarded priority of invention in the count to White, the senior party, upon a finding that Mitchell and Lannerd had failed to make sufficient showing why judgment on the record should not be entered against them. Upon appeal to the Board of Appeals, the decision of the Examiner of Interferences, awarding priority to White, was affirmed, by a majority of the Board, one member thereof dissenting.

In approaching a decision of the question at bar, it seems proper to point out that the record presents a very narrow issue. This is frequently the case where the novelty of the invention rests upon some attachment or improvement to a device in an old and crowded art. The structures disclosed in the Mitchell and Lannerd and the White applications, as pertain to the particular means here involved, are, however, quite different in their character and it will be necessary to describe these structures somewhat in detail in order that the proper meaning of the disputed terms in the count may be understood.

A patent of record to Weser, 1,100,107, of June 16, 1914, is prior art to both parties hereto. His machine is said not to be necessarily an automatic phonograph. However, he discloses a device used on a multiple record phonograph for removing the uppermost record of the stack from its position on the turntable so as to bring the record immediately thereunder to operative position. In order to accomplish this purpose, suitable means or mechanism is provided to project a cam-faced wedge located on the end of a bar between the upper and the lower records. When the wedge is automatically pushed into position between the records, the flat side of the wedge being down and the cam side of the wedge being up, the topmost record is raised to a position where it leaves the center post. The upward movement of the record is not brought about by any upward movement of the bar.

White, as far as the issue here is concerned, proposed to improve this feature of the Weser patent by providing that the flat surface of the wedge attached to the arm would be uppermost as it entered the space underneath the top record. The cam face of the wedge is designed to move upward in contract with the upper side or edge of the second record, the second record serving the purpose of a fulcrum, the pressure against which causes the flat surface of the wedge to be elevated, thus elevating the top record. White claims that his wedge when so inserted will not scratch the upper surface of the lower record. In the White device it is not intended that the last record on the stack can be removed by the so-called wedge.

The junior parties, Mitchell and Lannerd, in their patent disclose a radically different device for lifting a reproduced record over the center pin so that the record may be rolled off the turntable by the rotating movement thereof. They state that:

" * * * This is accomplished specifically by a movable bifurcated arm adapted to engage and grasp the peripheral edge of the top record on the stack upon completion of the reproduction, lift said record upwardly to a point above the upper end of the centering pin while permitting it to be discharged laterally by the rotating movement of the remaining group of records."

Through various cams, levers, pins, springs, etc., an arm which is situated on a bracket or post at one side of the turntable is caused to swing upwardly toward the stack of records. A feeling finger on said arm comes in contact with the upper edge of the top record and brings a plunger into position so that it may, as the swinging motion continues, enter between the top record and the one beneath it. A continued upward motion of the arm raises the record so that it will slide off the turntable.

It is the contention of the appellants that the count does not read on appellee's disclosure in several respects. They emphasize that "White embodies no means or element in his machine for *elevating an arm to raise and discharge the uppermost record,* as disclosed by the patent." (Italics quoted.) It will be noticed that the count recites: "Means actuated upon completion of the record for swinging said arm laterally into engagement with the uppermost record of the stack, and means for elevating said arm upon the continued movement of said means for raising said uppermost record to permit the discharge thereof." It is the position of the appellants, and substantially that of the dissenting member of the board, that White shows no means for elevating the rod "for raising said uppermost record"; that the alleged arm of White, which is designated by him as a rod or plunger, raises nothing, but that the cam wedge on the end of the rod raises the record, and in so doing the rod is raised. Appellants especially stress the argument that in White's disclosure there is no arm which "swings laterally into engagement with the uppermost record."

After careful consideration, we are of the opinion that appellants' contentions are sound. White's so-called arm does not "swing laterally" into engagement. We find no such movement in the White structure. Moreover, in the White structure the device for raising the record cannot be regarded as a means which will elevate the arm or rod "for raising said uppermost record to permit the discharge thereof." His arm is raised slightly as an incident to the operation of the other means, but its elevation is not for the purpose of raising the uppermost record as is called for by the count. In appellants' device is disclosed a means which elevates the arm in such a way that the elevation of the arm raises the topmost record.

It is too well settled to require extended citation that in this jurisdiction, in this kind of case, involving only the question of priority and questions ancillary thereto, express limitations in counts may not be ignored. Field v. Stow, 49 F.2d 1072, 18 C.C.P.A., Patents, 1502; Atherton v. Payne, 54 F.2d 821, 19 C.C.P.A., Patents, 867.

Appellee in his brief has devoted considerable space to an argument which amounts to a contention that even though certain limitations in dispute may not be precisely shown in his structure, he has at least shown the equivalent of the structure covered by the limitations.

It is well settled that in this kind of case the doctrine of equivalents cannot be applied. See In re Key, 76 F.2d 398, 22 C.C.P.A., Patents, 1098; also Ex Parte Forsyth, 18 U.S.P.Q. 124, and cases therein cited.

It is our conclusion that White cannot make the count. Since this is controlling of priority, the Board was in error in awarding priority to the senior party, White, and its decision is reversed.

Reversed.

GRAHAM, the late Presiding Judge, sat during the hearing of this case, but died before the opinion was prepared.