27 C.C.P.A.(Patents)

## McBRIDE v. TEEPLE.
Patent Appeal No. 4263.

Court of Customs and Patent Appeals.
Feb. 26, 1940.

Rehearing Denied April 5, 1940.

John H. Bruninga and John H. Sutherland, both of St. Louis, Mo. (Riordon & Riordon, of Washington, D.C., of counsel), for appellant.

Chester H. Biesterfeld, of Wilmington, Del. (Fred S. Cross, of Wilmington, Del., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences awarding to appellee priority of invention of the subject matter defined in the counts in issue, seven in number.

The general nature of the subject matter of the involved invention is described in the decision of the Examiner of Interferences as follows: "The involved invention is mainly characterized by the treatment of nitrocellulose base powder in grain form in suspension in water with nitroglycerine or other materials defined in the counts. In

the prior art as discussed in the Teeple patent either a suspension in water was not used or if it was used it was not in connection with nitrocellulose in the grain form. The purpose of suspending the powder grains and the treating material in water is to reduce the hazard and to prevent sticking of the grains which are softened by the action of the solvent. Since the treating material and the nitrocellulose powder grains are both substantially insoluble therein, the water does not interfere with the absorption of one by the other."

The interference arises between a patent No. 1,924,465 issued to appellee on August 29, 1933, upon an application filed October 27, 1932, and an application of apellant, Serial No. 751,584, filed November 5, 1934. The said patent of appellee recites that it is a continuation in part of an application filed by him on February 4, 1931, Serial No. 513,358. All of the claims corresponding to the counts in issue were copied by appellant from appellee's patent.

Counts 1, 2, 3 and 5 are illustrative of the counts in issue, and read as follows:

"1. The process of producing a propellent powder which comprises treating a water-suspension of a nitrocellulose base grain powder with a liquid explosive material of relatively high potential that is substantially insoluble in water and is a solvent for a portion of the powder, until the nitrocellulose is substantially impregnated with the material.

"2. The process of producng a propellent powder which comprises treating a water-suspension of a nitrocellulose base grain powder with an organic nitrate of relatively high potential which is at least liquid in water at a temperature of less than 100 degrees C. and which is substantially insoluble in water.

"3. The process of producing a propellent powder which comprises treating a water-suspension of a nitrocellulose base grain powder with a liquid nitric ester of a polyhydric alcohol until the nitric ester is substantially all absorbed by the powder grains.

"5. The process of producing a propellent powder which comprises treating a water-suspension of a nitrocellulose base grain powder with a nitrated glycerol, and agitating the mixture until the glycerol ester has been substantially absorbed by the powder grains."

Appellant is the junior party, and having filed his application after the issue of appellee's patent here in interference, the burden was upon him to establish priority of invention beyond a reasonable doubt. Wiley v. Mears et al., 75 F.2d 510, 22 C.C.P.A., Patents, 986.

It appears that appellant's application is owned by Western Cartridge Company, and appellee's patent is owned by E. I. du Pont de Nemours & Company.

Both parties filed preliminary statements and took testimony.

The Examiner of Interferences held that appellee had not established conception of the inventiton or its reduction to practice prior to the filing date of his first application, February 4, 1931, but that he was entitled to that date for conception and constructive reduction to practice of the invention. He also held that a patent, No. 1,955,-927, issued to appellant on April 24, 1934, upon an application filed November 14, 1930, did not disclose the invention embraced in any of the counts in issue, and that the testimony in behalf of appellant failed to establish conception of the invention by him prior to the date awarded to appellee as aforesaid, viz., February 4, 1931. The examiner therefore awarded priority of invention to appellee.

Upon appeal the Board of Appeals disagreed with the Examiner of Interferences with respect to the disclosure of appellant's patent, so far as count 1 was concerned, and held that appellant was entitled to the date of the application for said patent, November 14, 1930, for conception of the invention embraced in that count. With respect to the remaining counts the board agreed with the Examiner of Interferences that appellant's patent did not support them. We would observe at this point that none of the *claims* of appellant's patent embrace the invention here involved.

The board further agreed with the examiner that appellee was entitled to the date of his first application, February 4, 1931, for conception and constructive reduction to practice of the invention embraced in all of the counts, and that appellee had failed to establish any earlier date for conception and reduction to practice of the invention. The board further agreed with the examiner that appellant had failed to establish reduction to practice of the invention embraced in count 1,

or conception and reduction to practice of the invention embraced in the other counts, prior to the date awarded to appellee for conception and constructive reduction to practice of the invention.

Further with respect to count 1, the board did not pass upon the question of diligence of appellant in reducing the invention to practice. Appellant made two motions for reconsideration of this decision of the board, insisting that the question of appellant's diligence in reducing to practice the invention embraced in count 1 be considered. In his second petition for reconsideration he called to the attention of the board the fact that upon his appeal to the board from the decision of the Examiner of Interferences he specifically assigned error by the examiner in failing to find that appellant was diligent between June, 1930, and February 4, 1931, and "until McBride's plant scale reduction to practice."

The board denied both motions upon the ground that appellant had not raised the question of diligence of appellant before the Examiner of Interferences.

It appears that appellant filed an exhaustive brief with the Examiner of Interferences, and the board held that the question of appellant's diligence was not therein referred to. While appellant's counsel insists that the brief referred to did discuss the question of appellant's diligence, we agree with the board, after an examination of the brief, which is in the record before us, that appellant did not directly there raise the question of his diligence in reducing the invention to practice.

The question of the refusal of the board to consider the matter of appellant's diligence will hereinafter be discussed, it having been assigned as error in this appeal.

Many sharply contested questions are raised before us. The contentions of appellant may be summarized as follows:

1. That he is entitled to the date of the application for his patent, November 14, 1930, for conception and constructive reduction to practice of the invention embraced in all of the counts.

2. That he is entitled to the date of said application for conception of the invention and a finding of diligence in reducing it to practice.

3. That without any benefit from his 1930 application he is entitled, under the evidence in the case, to an award of priority upon the ground that he was the first to conceive and the first to reduce the invention to practice.

4. That appellee is not entitled to the date of his first application, February 4, 1931, for conception and constructive reduction to practice of the invention.

Appellee contends:

1. That he is entitled, as found by both Patent Office tribunals, to the date of his first application for conception and constrictive reduction to practice of the invention.

2. That appellant's patent does not disclose the involved invention.

3. That under the evidence in the case appellee is entitled to a date as early as 1929 for conception and actual reduction to practice of the invention.

4. That appellant has lost any rights to a patent which he may have had by reason of his long delay in filing an application for a patent.

We will first consider count 1 and the contention of the parties with respect thereto. It is appellant's principal contention that his said patent discloses the involved invention and that he is entitled to the date of his application therefor, viz., November 14, 1930, for conception and constructive reduction to practice of the invention. The Examiner of Interferences upon this point stated: "The party McBride also claims the benefit of an earlier filed application (pp. 46–49, McBride brief.) This application which was filed November 14, 1930 matured into patent No. 1,955,927 on April 24, 1934, more than six months prior to the filing of the involved McBride application. The hiatus which thus exists between the pendency of the two applications would in any event preclude the party McBride from obtaining the benefit of the earlier disclosure as a constructive reduction to practice and because it is considered not to disclose the invention of the counts the earlier application is deemed insufficient even as evidence of conception thereof. The said patent may be said to disclose the processes of the counts except for the explosive substances specified in the counts with which the powder grains are impregnated. The McBride patent concerns itself with applying deter-

rents to powder grains to slow up the combustion, the deterrents named being diamylphthalate, dibutyl phthalate, and the mono-, di-, and trinitro toluenes."

The examiner further held that of the deterrents named in appellant's patent only trinitro toluene (hereinafter called TNT) was an "explosive material of relatively high potential," but that, inasmuch as count 1 requires that such explosive material must be liquid, and TNT is not liquid at ordinary room temperature, it does not respond to the requirement of count 1.

The Board of Appeals upon this phase of the case disagreed with the Examiner of Interferences in so far as he held that TNT was not a liquid explosive of relatively high potential. In its decision it stated: "Passing now to the earlier McBride application, No. 495,672, the examiner has stated that trinitrotoluene is not liquid at ordinary room temperature. He considers that count 1 must be construed in this manner. The party McBride has pointed out that in the Teeple patent it is stated in effect that the substances may be either liquid at ordinary temperatures or may be liquefied without hazard in the presence of hot water at a temperature less than 212° F. It appears that trinitrotoluene becomes liquid at less than 212° F. We believe, therefore, that the party McBride has established conception as to the subject matter of count 1 as of the date of filing his earlier application. We have also considered the arguments of the party McBride as to the remaining counts but we are of the view that they are not satisfied by his earlier application. We agree with the examiner that inasmuch as there is a hiatus between the time the earlier McBride application eventuated into a patent and the filing of the application involved in the present interference, that party is only entitled to conception as to any counts which will read upon the earlier application."

We are in agreement with the view of the board that the use of TNT expressly referred to in appellant's patent responds to that element of count 1 embracing a "liquid explosive material of relatively high potential."

Appellee, however, contends that in other respects count 1 is not supported by appellant's patent in that, as claimed by appellee, it does not disclose that the nitrocellulose is "substantially impregnated" with the ex-plosive material as required by the count. Upon this point appellant's patent states:

"Generally stated in accordance with this invention, the powder grains are treated with a deterrent while in a state of suspension. In accordance with one embodiment of this invention, the deterrent is emulsified with a suitable liquid which is preferably a nonsolvent for the powder grains; such a liquid is water, whereby a water emulsion of the deterrent can be made. In order to secure the addition of a predetermined amount of deterrent to powder grains, the powder grains are treated with a predetermined amount of the deterrent in the emulsified state until the deterrent is taken from the emulsion by the powder grain. In accordance with one embodiment of this invention, the powder grains are agitated in an emulsion of the deterrent and containing a predetermined amount of the deterrent until the liquid with which the deterrent is emulsified clears. * * *

*   *   *   *   *   *

"As an illustrative embodiment of this invention, a nitro-cellulose-nitro-glycerine powder grain containing 15% nitroglycerine is surface treated with diamyl phthalate in the following manner: A water emulsion is formed with the proper amount of the deterrent using, for instance, 5½ parts of the deterrent relative to 94½ parts of the powder. Into this emulsion the powder grains are dumped, agitation being continued until no cloudiness of the water is preceptible, that is, until the deterrent has been completely taken up by the powder grains. Because of the finely divided condition, almost colloidal, of the deterrent in the water, distribution is ideal, and the deterrent because of its efficient gelatinizing properties is attracted to the surfaces of the powder grains. As the deterrent droplets are picked up, the surface of the powder grains are softened; however, the presence of the water very efficiently cushions each grain from the others until gelatinization has been completed.

*   *   *   *   *   *

"Where the deterrent is dinitro toluene instead of diamyl phthalate, it is found that about twice the amount of deterrent is required. Now, DNT at ordinary temperatures is a solid; accordingly, the process is varied to the following extent: The amount of water required is heated to

about 95° C. and the DNT allowed to melt in this water. Sufficient agitation is then applied to completely distribute the molten DNT throughout the water, so as to form an emulsion therewith. The powder when added very readily picks up the very tiny globules of DNT due perhaps to the accelerated gelatinization of nitro-cellulose at elevated temperatures. Agitation at this temperature is continued until the water is clear, which occurs in most cases between one and five minutes. Thereafter more water may be added or the container may be externally cooled so that the temperature is reduced to about 60° C. and agitation is continued at this temperature for about twenty-five minutes."

It appears from the evidence that liquid explosive materials of relatively high potential may act either as accelerants or deterrents, according to their composition, and that it is immaterial to the process here involved as set forth in count 1, whether the explosive material acts as an accelerant or as a deterrent. It appears from the evidence and from the decision of the Examiner of Interferences that dinitrotoluene is an explosive material, and as before noted TNT is indicated as one of the agencies that may be used in the process.

We are of the opinion that the disclosure of the patent that "the deterrent has been completely taken up by the powder grains," and that "As the deterrent droplets are picked up, the surface of the powder grains are softened; however, the presence of the water very efficiently cushions each grain from the others until *gelatinization* has been completed," and that, as stated in the patent, "The process is believed to be one of effecting *complete gelatinization*" (italics supplied), supports the element of count 1 reciting that the nitrocellulose is substantially impregnated with the explosive material.

It is interesting to note that while appellee relies upon his early application for conception and constructive reduction to practice of the invention embraced in count 1, as found by the Patent Office tribunals, said early application is in our opinion subject to the same criticism that appellee makes of the disclosure of appellant's patent. Each discloses that the explosive material is absorbed by the base powder grains, but neither discloses that the nitrocellulose is thoroughly or completely impregnated with the material.

This is disclosed by appellee's later application upon which his patent here involved was granted. In the patent it is stated that:

"* * * However, at the end of this period while the nitroglycerin has been absorbed by the base powder grains, it has not thoroughly penetrated the same. If the agitation in water is stopped at this point the individual powder grains will tend to stick together in more or less irregular masses. Therefore, the agitation of the powder grains containing nitroglycerin is continued for a number of hours in the water medium in order to cause the penetration of the powder grains by the nitroglycerin to go to completion. * * *"

It is also important to note that, in addition to the counts in issue, corresponding to claims in appellee's patent, there are six claims in said patent which require that the explosive material be completely absorbed by the powder grains, while count 1 requires only that the nitrocellulose be substantially impregnated with the explosive material. Thus appellee himself in his patent has differentiated between *substantial* absorption or impregnation and *complete* absorption or impregnation, and we are of the opinion that the absorption disclosed in appellant's patent supports the element of count 1 under discussion.

In the case of Robins v. Wettlaufer, 81 F.2d 882, 23 C.C.P.A., Patents, 952, we had occasion to consider the meaning of the word "substantially" as used in a patent claim and we there held in effect that the word should not be given the same meaning as the word "completely."

It follows from the foregoing that we are in agreement with the Board of Appeals that appellant is entitled to the date of his application (November 14, 1930) upon which his said patent was issued for conception of the invention embraced in count 1.

Appellant, however, contends that he is also entitled to the date of said application for constructive reduction to practice of the invention. The board held against appellant upon this point upon the ground that there was a hiatus between the time of issue of appellant's patent upon his early application and the time of filing of appellant's application here involved, and that he was not entitled to the date of said early application for constructive reduction to practice of the invention.

In support of his contention appellant relies largely upon our decision in the case of Wiley v. Mears et al., 75 F.2d 510, 22 C.C.P.A., Patents, 986, while appellee relies upon our decision in the case of Conover v. Downs, 35 F.2d 59, 17 C.C.P.A., Patents, 587, in support of the contrary conclusion reached by the board.

An examination of these two cases discloses that they appear to be in conflict in that in the Wiley v. Mears et al. case, supra, an earlier application was held to constitute a constructive reduction to practice with respect to certain counts although there was lack of continuity in the applications, while in Conover v. Downs, supra, a contrary view was expressed. In the latter case the very question before us was directly involved, and after reviewing a number of precedents upon the question we held that where an application involved in an interference was not filed until after the grant of a patent disclosing but not claiming the invention, the filing of the application which matured into a patent was not a constructive reduction to practice of the invention in issue. The situation before us is exactly that which existed in the Conover case, and it is clear that we could not agree with appellant's contention without overruling our holding in said case. We adhere to the views there expressed and would observe that we have expressly affirmed this holding in the following cases: Fessenden v. Wilson et al., 48 F.2d 422, 18 C.C.P.A., Patents, 1171; Writer v. Kiwad, 63 F.2d 259, 20 C.C.P.A., Patents, 869; and Euth v. Oliver, 70 F.2d 110, 21 C.C.P.A., Patents, 1027.

This question has been so thoroughly considered by us in the cited cases that we do not consider it open to further discussion.

With reference to the case of Wiley v. Mears et al., supra, we have examined with care our opinion and the record in that case and we find that the question of constructive reduction to practice of an invention where there is a lack of continuity in applications was not raised before us, nor does it appear to have been raised before the Patent Office tribunals for it is not referred to in their decisions. Apparently the only question there raised was that of disclosure in the early application, and it seems to have been assumed that if there was such disclosure the application not only was evidence of conception of the invention, but that it constituted a constructive reduction to practice of the invention there involved.

In any event, as hereinbefore stated, we adhere to the views expressed in Conover v. Downs, supra, and hold that while appellant is entitled to the date of his early application, November 14, 1930, for conception of the invention embraced in count 1, that application did not constitute a constructive reduction to practice of the same.

Appellant further claims that, being entitled to the date of November 14, 1930, for conception of the invention embraced in count 1, he is entitled to an award of priority upon the ground of diligence in actually reducing the invention to practice. This question will be considered by us later in this opinion.

Appellant makes a further contention that, regardless of his early application, he is entitled to an earlier date of conception and actual reduction to practice of the invention.

In view of our conclusion hereinafter stated that appellee is not entitled to a date earlier than February 4, 1931, for conception of the invention, it is unnecessary for us to consider whether appellant is entitled to an earlier date than that accorded him by the Board of Appeals for conception of the invention, and we will consider in this connection only whether appellant has established an actual reduction to practice of the invention embraced in count 1 prior to any date to which appellee is entitled for reduction to practice.

Upon this question the Board of Appeals in its decision stated:

"Taking up now the proofs offered by the party McBride as to actual reduction to practice, as well as to conception, it appears that the record does not establish the fact that any composition called for in the counts was found to be satisfactory. This party contends, however, that inasmuch as the counts are directed to a process, it was not necessary to prove that the product was entirely satisfactory. He states in effect that the fact that the powder was found to be either too fast or slow had nothing to do with the success of the proces. It is his position, as we understand, that those skilled in the art thoroughly understood how to control the speed of combustion and the mere fact that the powders did not burn at the desired speed for the particular ammunition

desired does not in any way indicate that the process of impregnating the nitrocellulose with nitroglycerine was unsatisfactory.

"We are of the opinion that before it can be assumed that a process of combining explosives, such as is involved in this interference, can be regarded as satisfactory, a test of the product must be made and we consider that before an applicant can overcome the filing date of another as to subject matter of this nature, he must prove that the composition was satisfactory. We do not believe that it should be left to speculation as to whether those skilled in the art would understand that a process of preparing the composition was satisfactory when the composition itself was not shown to be suitable for its purpose."

We are in agreement with the above-quoted views of the Board of Appeals, and, considering the very heavy burden upon appellant, we are clear that appellant has fallen far short of establishing, by the evidence which we will not here summarize, actual reduction to practice of the invention prior to February 4, 1931, the date of appellee's first application which will be further considered hereinafter.

We will next consider the question of appellee's conception and reduction to practice of the invention embraced in count 1. It appears that this count was an original allowed claim in appellee's early application filed February 4, 1931, being claim 1 thereof. The remaining counts before us were also original claims in said application. After reciting these facts the Examiner of Interferences in his decision stated:

"They are therefore part of the earlier Teeple specification as originally presented and since in the opinion of the examiner of interferences they are not inconsistent with the remainder of the specification, the party Teeple will be held entitled to its filing date, February 4, 1931, as his record date. McBride's attack on the earlier disclosure is mainly in respect to whether or not it is sufficiently pointed out that a suspension in water of the nitrocellulose powder grains is to be secured. This contention is without force for no inconsistency between the original claims and the specification is pointed out and in fact such inconsistency is not present. The original Teeple specification does not state a suspension is to be avoided but on the contrary states in lines 18 and 19, page 3:

" 'The base powder is then agitated in water.'

"The party Teeple is held entitled to the earlier filing date, February 4, 1931, as his record date."

The Board of Appeals upon this point stated in its decision:

"The examiner has held that the party Teeple is entitled to the filing date of his earlier application, No. 513,358. That application does not specifically state in the body of the specification that the grain powder is held in a water suspension but does describe agitating the powder in water and referred to the agitated mixture as a 'slurry.' The original claims specified a water suspension.

"The party McBride contends that the body of the specification does not disclose a water suspension and that a slurry is not such a suspension. It is the opinion of the Examiner of Interferences that the original claims are not inconsistent with the description in the body of the specification and that they may be relied upon for the disclosure of a water suspension.

"It is our opinion that the position taken by the examiner is sound. We consider that, even in a slurry, a film of water will be present between the grains but, in any event, we think that there is no inconsistency between the original specification and claims and that the claims may be relied upon for a more definite description of the nature of the mixture."

It is elementary in patent law that claims contained in an application as originally filed may be considered as a part of the disclosure of the application. Count 1 expressly requires a water suspension of a nitrocellulose base grain powder.

Appellee's early application of February 4, 1931, after describing the process of producing a nitrocellulose base powder, states: "* * * The base powder is then agitated in water, the temperature of which is varied according to the material which I propose to add. I then add to the slurry, materials which I desire to incorporate in the powder, such as nitroglycerin, nitroglycols, or other nitro-polyhydric alcohols, or any ingredient or ingredients which are not miscible with water and which are either solvents for nitrocellulose or which may be absorbed by the nitrocellulose powder base grain. I continue the agitation until the powder base has absorbed the ingredient or ingredients added to

the slurry. After the absorption process has been completed or substantially so, the powder grains are subjected to an air drying treatment to remove excess moisture and the resulting powder grains may then be finished by any of the known methods."

We find no material difference in the disclosure of appellee's early application and that contained in appellant's application of November 14, 1930, upon which his patent was issued.

Inasmuch as appellee's early application was copending when his patent was issued, there was continuity of applications and he is entitled to the date of his early appplication, February 4, 1931, not only for conception but for constructive reduction to practice of the invention embraced in count 1.

Appellee, however, contends that under the evidence in the case he is entitled to a date for conception and actual reduction to practice of the invention prior to November 14, 1930, the date awarded to appellant for conception.

The Examiner of Interferences in his decision did not discuss this question in detail. He did, however, pass upon it and stated: "Also because of the possibility that a different viewpoint may be adopted on appeal, it may be stated as to the party Teeple's proofs that in the opinion of the examiner of interferences they do not sufficiently and clearly show that a suspension of the powder grains in water solution was secured in any of the many experiments conducted in his behalf. This requirement, as pointed out previously, occurs in each of the counts as a material limitation and because of this deficiency in the proof it is held that Teeple is entitled to no dates for inventive acts earlier than his record date, February 4, 1931."

The Board of Appeals in its decision did not specifically refer to this question, but stated as follows: "We do not consider that any of the other rulings made by the Examiner of Interferences is sufficiently open to argument so as to justify discussion by us."

This of course constituted an affirmance of the finding of the Examiner of Interferences upon this question.

We have carefully examined the evidence upon this point. It appears that appellee was deceased at the time of the taking of testimony in the case, and the evidence with regard to conception and actual reduction to practice of the invention by appellee consisted very largely of experiments conducted by appellee's assignee and reports with reference thereto. The examiner stated in his decision with reference to one of the experiments or tests that it was very doubtful whether there was a water suspension of the grains of powder. We are not clear that the process employed in any of the tests resulted in such water suspension. We find no other clear evidence of conception of the invention by appellee prior to November 14, 1930, the date awarded to appellant for conception of the invention embraced in count 1, or prior to February 4, 1931, the date of appellee's first application, and the well-established rule is here applicable that concurring findings of the Patent Office tribunals upon questions of fact will not be disturbed by us unless manifestly wrong. Therefore, we are in agreement with such tribunals that the earliest date that may be awarded to appellee with respect to all of the counts is February 4, 1931, the date of filing of his early application.

It follows from the foregoing that we are in agreement with the conclusion of the Board of Appeals that, while appellant was the first to conceive the invention embraced in count 1, he was the last to reduce it to practice.

Ordinarily under these circumstances the question of diligence by appellant from immediately prior to appellee's entry into the field, February 4, 1931, would be determined before there could properly be an award of priority. Neither the Examiner of Interferences nor the Board of Appeals passed upon the merits of this question. In so far as the decision of the Examiner of Interferences is concerned, it was not necessary for him to decide that question because he held that appellee was the first to conceive and the first to reduce the invention to practice. Had the examiner found, as did the board, that appellant was entitled to the date of November 14, 1930, for conception of the invention embraced in count 1, we think he would in his decision have determined the question of appellant's diligence in reducing the invention to practice.

However, in appellant's appeal to the board he specifically assigned error upon the part of the Examiner of Interferences in failing to find diligence upon the part of

appellant prior to February 4, 1931, and to the date of his plant scale reduction to practice. As stated above, the board did not pass upon this assignment of error so far as the merits were concerned. In its original decision it was not mentioned at all. Appellant applied for reconsideration of the decision, insisting that appellant was entitled to a decision upon the question of his diligence in reducing the invention to practice. In denying this petition the board stated:

"The party McBride petitions for reconsideration of our decision rendered December 30, 1938.

"He contends that we should have considered the question of his diligence from just prior to February 4, 1931, to sometime in November, 1931.

"This question was not considered by the Examiner of Interferences nor do we find in the McBride brief, which was before the examiner, any request for such consideration. It is true that that brief refers to evidence as to activities during that period, but only in connection with the assumption that the party Teeple is not entitled to February 4, 1931, for reduction to practice. Not a word therein do we discover concerning diligence.

"We think that, under the circumstances, the Examiner of Interferences was fully justified in not considering this question. We also believe that we should not investigate this matter without remanding the interference to the examiner for a ruling on it. We think that it would be unfair to the party Teeple to delay the prosecution in order to consider a question which the party McBride could have urged when he was before the examiner.

"The petition is therefore denied."

Appellant filed a second request for reconsideration of the question of his diligence, which was also denied by the board.

We have examined the brief of appellant before the Examiner of Interferences, which brief is in the record before us, and while it is true that appellant does not there in express words claim diligence from the time of the entry of appellee into the field to appellant's actual reduction to practice, we do find that he set up in detail in said brief his claimed activities with respect to the subject matter of the invention from October 23, 1929, to December 29, 1931, when he claims that production of 5,000 pounds of powder embodying the invention

was completed. We also find in the brief the following: "As to McBride and Western we have noted the above situation where after the 'discontinuance' (abandonment) by Du Pont on June 3, 1930, McBride and Western proceeded on June 16, 1930, and by the end of June had completed tests to such an extent that 'we considered the work sufficiently conclusive to construct the plant scale nitroglycerin coating house' (McB.R. 60) and that Western proceeded as diligently as anybody could be expected to with the dangerous nitroglycerin then under consideration and with due regard to life and property. However, before the end of the year 1931, five thousand pounds had been produced."

We feel confident that, had the Examiner of Interferences found that appellant was the first to conceive the invention, he would have passed upon the question of appellant's diligence, especially in view of the stress laid upon appellant's activities in the brief before the Examiner of Interferences; and inasmuch as appellant in his appeal to the board specifically assigned error by the examiner in not passing upon the question of appellant's diligence, we think the board, having reversed the examiner upon the point of appellant's conception of the invention embraced in count 1, should either have passed upon the question of appellant's diligence or remanded the case to the examiner for a finding thereon.

While it may be a close question as to whether the failure of the board to determine the question of appellant's diligence or remand the case to the examiner for a finding upon that question constitutes reversible error, it is our opinion that in the interest of justice, before making an award of priority, the question of appellant's diligence should be determined, and it is our conclusion that, as to said count 1, the decision of the board should be reversed in order that such finding may be made by the proper Patent Office tribunals.

All of the foregoing discussion is limited to count 1 for the reason that, as to all of the other counts, the record does not establish either priority of conception or reduction to practice by appellant.

The examiner in his decision pointed out in detail elements of each of the counts, other than count 1, which were not disclosed in appellant's patent or disclosed in his evidence of activities prior to February 4, 1931, the date accorded to appellee for con-

ception and reduction to practice of all of the counts here involved. We are clear that appellee was entitled to said date, as held by both Patent Office tribunals, and we are not satisfied that they .erred in their holding of lack of disclosure by appellant of some of the elements of each count other than count 1 prior to February 4, 1931.

Appellant's counsel does not seriously challenge the holding of the Patent Office tribunals with respect to lack of disclosure supporting counts other than count 1, but we understand their position to be that the sole feature of novelty involved in any of the counts is that of treating a water suspension of nitrocellulose base grain powder, and that therefore it is immaterial whether appellant has failed to disclose other elements of the counts. Upon this point we quote from their brief as follows:

"While the Board of Appeals found that McBride's application, filed November 14, 1930, disclosed only the subject-matter of Count 1, the reason why the Board did not find that said McBride application disclosed the subject-matter of the other counts was because McBride's application did not mention nitroglycerin among the surface-treating agents enumerated therein.

"As we have previously shown, however, the sole feature of novelty involved in any of the counts in this interference is the procedural step of 'treating a *water-suspension* of nitrocellulose base *grain* powder' with a modifying agent, irrespective of whether the modifying agent is an accelerant like nitroglycerin or a deterrent like DNT. Consequently, it is the same invention, regardless of what particular material is chosen to flavor the powder, whether diamylphthalate, a nitrated glycol, or other known liquid reagents are used.
\* \* \*

\*　　\*　　\*　　\*　　\*　　\*

"We submit, therefore, that when Mc-Bride demonstrated the utility of his process of treating 'a water-suspension of nitrocellulose base grain powder' with one surface-treating agent, he then and there became the inventor of that process, regardless of what well-known surface-treating agents were employed."

In support of appellant's contention his counsel cited our decision in the case of Deutsch et al. v. Ball, 77 F.2d 930, 22 C.C. P.A., Patents, 1322. The question involved in that case was whether a certain expression in the claims should be held to be ·a limitation or merely an introductory phrase. The court held that it was not a limitation.

Appellant also cited our decision in the case of Riney v. Thomas, 77 F.2d 525, 22 C.C.P.A., Patents, 1250. This case merely held that in the disclosure of Riney a certain quality embraced in the counts was inherent in his invention, and the fact that specific mention was not made of this in his specification did not bar him from making the claims corresponding to the counts.

Nothing is better settled in patent law than that in interference cases express limitations in counts may not be ignored. Hartog v. Long et al., 47 F.2d 365, 18 C.C. P.A., Patents, 993; In re Creveling, 61 F. 2d 862, 20 C.C.P.A., Patents, 701. In re Huddleston et al., 77 F.2d 501, 22 C.C.P.A., Patents, 1270. All of the limitations here in question are express limitations.

It is also well settled that in interference cases the doctrine of equivalents, applied in infringement cases, has no application. Mitchell et al. v. White, 93 F.2d 216, 25 C.C.P.A., Patents, 788.

For the reasons above stated, we are of the opinion that the decision of the Board of Appeals as to all counts other than count 1 should be affirmed.

Appellant raises some minor questions which we will briefly consider.

It is claimed by appellant that a British patent was issued to appellee's assignee on April 23, 1935, in which it appears that the "Convention date" or date of filing of the first application in the United States was stated to be October 27, 1932, which is the filing date of the application upon which appellee's patent here in interference was issued, and appellant contends that inasmuch as it was not there claimed that the early application of appellee, filed February 4, 1931, disclosed the invention here involved, it should be held that appellee is not entitled to the date of his said early application for conception and constructive reduction to practice of the invention.

We would first observe that we do not find this British patent in the record, nor. do we find any testimony with respect thereto. The patent is included in an appendix to appellant's brief. Plainly that question is not properly before us for consideration, but even if it were we could find no merit in appellant's contention for

the reason that, while of course appellee's United States patent discloses the invention here involved, it also discloses and claims other matters that are not and could not be involved in this interference, which matters were also included in his British application and are not part of his early application. Therefore, no inference should be drawn that appellee was not in possession of the invention here involved as early as February 4, 1931.

Appellant also contends that he is not under the burden of establishing priority of invention beyond a reasonable doubt, but only by a preponderance of evidence. It is his contention that the Patent Office should have declared an interference between appellee's application upon which his patent issued and appellant's patent; that appellee's patent was inadvertently issued and therefore he is required to establish priority by a preponderance of evidence only. Upon this point we would observe that appellant's patent is not directly involved in this interference, but is relied upon by appellant only for conception and constructive reduction to practice of the involved invention. There was no duty upon appellee's part to seek an interference with appellant's patent for that patent did not claim the invention here involved. See rule 94 of the Rules of Practice of the United States Patent Office.

Therefore the rule as to preponderance of evidence when there has been an inadvertent issue of a patent has no application here.

It appears that after the decision of the Board of Appeals herein appellant moved to substitute for his application here involved an application for reissue of his patent No. 1,955,927, which reissue application was not filed until after the decision of the board herein. This motion was denied by the commissioner and error is assigned in such denial. This was not a decision of the Board of Appeals, and therefore this question could not be here determined by us.

Appellee also makes a contention which will be briefly discussed, viz., that appellant, by reason of his long delay in filing his application here involved, has forfeited his right to a patent under the doctrine of Mason v. Hepburn, 13 App.D.C. 86, and other cases cited by him.

Appellant filed his application about fourteen months after the issue of appellee's patent, and we find nothing in the record to justify the application of the doctrine of the Mason · v. Hepburn case, supra, involving the concealment and suppression of an invention. Appellant disclosed the invention embraced in count 1 in his patent issued April 24, 1934, about seven months after the issue of appellee's patent.

Further discussion of this point is deemed unnecessary.

For the reasons herein stated, the decision of the Board of Appeals is affirmed with respect to counts 2 to 7, inclusive; it is reversed with respect to count 1, and the cause is remanded for further proceedings with respect to said count consistent with the views herein expressed.

Modified.